# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND BUILDING INDUSTRY ASSOCIATION, INC, et al., | ) <br> ) Case No. 1:25-cv-113 <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) *AMICUS CURIAE* BRIEF IN SUPPORT <br> ) OF DEFENDANT'S MOTION TO <br> ) DISMISS* |
| SERENA COLEMAN McILWAIN, in her Official Capacity as the Secretary of the Maryland Department of the Environment, MARYLAND | ) <br> ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

\*No party's counsel authored the attached *amicus curiae* brief in whole or in part, and no party or its counsel contributed money to fund the preparation or submission of the attached *amicus curiae* brief. *See* L.R. 105.12(b).

# TABLE OF CONTENTS

STATEMENT OF INTEREST ........................................................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 3

ARGUMENT .................................................................................................................................. 4

    I.     Buildings Emit Harmful Pollutants with Known Public Health Threats that Degrade Air Quality .................................................................................................................. 4

    II.    Building Emissions Cause Harmful Climate Pollution, in Contravention of Maryland Law. ...................................................................................................................... 9

    III.   Regulating Air Pollution from Buildings Falls Squarely Within Maryland's Authority. ............................................................................................................................ 11

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*De Buono v. NYSA-ILA Med. and Clinical Services Fund*,
  520 U.S. 806 (1997) .................................................................................................................. 11

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982)……………………………..…………………………………………….13

*Rowe v. New Hampshire Motor Transp. Ass'n*,
  552 U.S. 364 (2008) ................................................................................................................... 13

*Ass'n of Contracting Plumbers v. City of New York*
  2025 WL 843619 (S.D.N.Y. Mar. 18, 2025) ............................................................................. 13

*Lara-Aguilar v. Sessions*, 889 F.3d 134
  (4th Cir. 2018) ............................................................................................................................ 13

*Metro Taxicab Bd. of Trade v. City of New York*,
  615 F.3d 152 (2d Cir. 2010) ...................................................................................................... 11

*Star Scientific Inc. v. Beales*,
  278 F.3d 339 (4th Cir. 2002)……………………………………………………………………11

*Troll Co. v. Uneeda Doll Co.*,
  483 F.3d 150 (2d Cir. 2007)……………………………………………………………………13

**Statutes and Regulations**

Md. Code Ann., Env't. §§ 2–1204.1, 2–1204.2………………………………………………….10
Md. COMAR 26.28. 03………………………………………………………………………....10
Md. COMAR 26.28. 04………………………………………………………………………….11

**Federal Register**

California State Implementation Plan Revisions,
  47 Fed. Reg. 29,231 (Jan. 7, 1986) ............................................................................................. 12

Clean Air Fine Particle Implementation Rule,
  72 Fed. Reg. 20,586 (Apr. 25, 2007) ............................................................................................ 5

Energy Conservation Program: Energy Conservation Standards for Residential Refrigerators,
  Refrigerator-Freezers, and Freezers,
  75 Fed. Reg. 59,470. ................................................................................................................... 12

Energy Conservation Program: Energy Conservation Standards for Residential Water Heaters,
  Direct Heating Equipment, and Pool Heaters,
  75 Fed. Reg. 20,112 (Apr. 16, 2010). ......................................................................................... 13

Energy of Conservation Program for Consumer Products; Proposed Rulemaking and Public
  Hearings Regarding Energy Efficiency Standards for Refrigerators and Refrigerator-Freezers,
  Freezers, Clothes Dryers, Water Heaters, Room Air Conditioners, Kitchen Ranges and Ovens,
  Central Air Conditioners, and Furnaces, 47 Fed. Reg. 14,424 (April 2, 1982). ........................ 12

National Ambient Air Quality Standards for Particulate Matter,
  62 Fed. Reg. 38,652 (July 18, 1997) ............................................................................................ 5

National Ambient Air Quality Standards for Particulate Matter,
  71 Fed. Reg. 61,144 (Oct. 17, 2006) ............................................................................................ 5

National Primary and Secondary Ambient Air Quality Standards,
  36 Fed. Reg. 8186 (Apr. 30, 1971) ............................................................................................... 4

Prevention of Significant Deterioration (PSD) for Particulate Matter Less Than 2.5 Micrometers ($PM_{2.5}$)—Increments, Significant Impact Levels (SILs) and Significant Monitoring Concentration (SMC), 72 Fed. Reg. 54,112 (Sept. 21, 2007) ................................ 5

Primary National Ambient Air Quality Standards for Nitrogen Dioxide, 75 Fed. Reg. 6474 (Feb. 9, 2010) ................................ 4

**Other Authorities**

Am. Cancer Soc'y, *Benzene and Cancer Risk* ................................ 6

Andee Krasner et al., *Cooking with Gas, Household Air Pollution, and Asthma: Little Recognized Risk for Children*, 83 J. Env't Health 8 (2021) ................................ 4

Beyond Gas, *Cooking Up Danger: Community Study Reveals Hazardous Nitrogen Dioxide Levels in DC and Maryland Kitchens* (Nov. 2024) ................................ 2

CCAN, et al., *Cutting Through the Smog: How Air Quality Standards Help Solve the Hidden Health Toll Of Air Pollution From Maryland's Homes And Businesses* (Sept. 2023). .......... 2, 7

Christopher W. Tessum et al., *PM2.5 Polluters Disproportionately and Systemically Affect People of Color in the United States* ................................ 8

Ctrs. for Disease Control & Prevention, *Carbon Monoxide Poisoning* ................................ 6

Drew R. Michanowicz et al., *Home Is Where the Pipeline Ends: Characterization of Volatile Organic Compounds Present in Natural Gas at the Point of the Residential End User* 56 Env't Sci. & Tech. 10258 (June 2022) ................................ 4, 6

Eric D. Lebel et al., *Composition, Emissions, and Air Quality Impacts of Hazardous Air Pollutants in Unburned Natural Gas from Residential Stoves in California*, 56 Env't Sci. & Tech. 15828 (Oct. 20, 2022) ................................ 4

Jason J. Rose *et al.*, *Carbon Monoxide Poisoning: Pathogenesis, Management, and Future Directions of Therapy*, 195 Am. J. Respiratory & Critical Care Med. 596 (2017) ................................ 6

Md. Pub. Serv. Comm'n Case No. 9673 (Complaint of the Office of People's Counsel Against Washington Gas Light Company and WGL Energy Services, Inc.). ................................ 3

Md. Pub. Serv. Comm'n Case No. 9707 (Petition of the Office of People's Counsel for Near-Term, Priority Actions and Comprehensive, Long-Term Planning For Maryland's Gas Companies). ................................ 2

Md. Pub. Serv. Comm'n Case No. 9708 (Washington Gas Light Company's Application for Approval of a New Gas System Strategic Infrastructure Development and Enhancement Plan and Accompanying Cost Recovery Mechanism). ................................ 2

State Climate Policy Dashboard, *Greenhouse Gas Emissions Projections in Maryland*. ................................ 9

Sonoma Technology, *Ozone Impacts from Building Combustion Sources on Nonattainment Areas in Maryland* (Sept. 25, 2024) ................................ 2

University of Md. Center for Enviro. Science, *Sea-Level Rise Projections* ................................ 9

U.S. Center for Disease Control, Polycyclic Aromatic Hydrocarbons (PAHs) Fact Sheet (Nov. 2009) ................................ 6

U.S. EPA, *Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards* ................................ 7

U.S. EPA, R*egulatory and Guidance Information by Topic: Air* ................................ 13

U.S. EPA, *Air Quality Design Values*, ................................ 8

U.S. EPA, *Basic Information about NO2* ................................ 4

U.S. EPA, *Carbon Monoxide's Impact on Indoor Air Quality* ................................ 6

U.S. EPA, *Facts About Formaldehyde* ................................ 4

U.S. EPA, *Health and Environmental Effects of Particulate Matter (PM): Health Effects* ........... 5
U.S. EPA, *Integrated Science Assessment (ISA) For Oxides of Nitrogen – Health Criteria*, ........ 5
U.S. EPA, *Integrated Science Assessment for Ozone and Related Photochemical Oxidants* (Feb. 2013) .................................................................................................................................. 7, 8
U.S. EPA, *Integrated Science Assessment for Particulate Matter* ES-23 (Dec. 2019) .................. 5
U.S. EPA, *National Emissions Inventory (NEI) Data* ..................................................................... 7
U.S. EPA, *Ozone National Ambient Air Quality Standards (NAAQS)* ........................................... 8
U.S. EPA, *What are combustion products?* .................................................................................. 4
U.S. EPA, *What is Ozone?* ........................................................................................................... 7

**STATEMENT OF INTEREST**

Founded in 1892, Sierra Club is a national grassroots environmental organization with more than 620,000 members nationwide, including over 14,000 members in Maryland. For decades, Sierra Club has supported policies that limit greenhouse gas emissions and promote clean energy. Sierra Club's Building Electrification campaign endeavors to educate the public about the health harms caused by emissions from buildings and advocates for policies that protect against such harms.

The Chesapeake Climate Action Network ("CCAN") is a grassroots organization dedicated exclusively to fighting for bold and just solutions to climate change in the Chesapeake region of Maryland, Virginia, and Washington, D.C. CCAN's mission is to build a diverse movement powerful enough to put this region on the path to climate stability, while using its proximity to the nation's capital to inspire action in neighboring states, around the country, and across the world. CCAN has more than 35,000 members across Maryland.

Sierra Club and CCAN have been actively highlighting the public health, outdoor air quality, and climate threats associated with building emissions in Maryland. To combat those harms, CCAN and Sierra Club vigorously supported the passage of the 2022 Climate Solutions Now Act ("CSNA"), including its landmark provision requiring the Maryland Department of the Environment ("MDE") to develop Building Energy Performance Standards ("BEPS"), which are at issue in this case. Both CCAN and Sierra Club have been active proponents of Maryland legislation and regulations that would require purchases of new electric heating equipment in homes, require building owners to reduce emissions from fuel combustion in their buildings, and require gas companies to reduce emissions from heating equipment throughout their service territories. Moreover, both Sierra Club and CCAN have issued reports highlighting the public

1

health threats of gas combustion in Maryland, including its significant contribution to outdoor air pollution in the form of nitrogen oxide.[1] In fact, a report co-authored by CCAN in September 2023 found that pollution from fossil fuel equipment in buildings emits significantly more nitrogen oxide than regional power plants.[2]

In Maryland and states including California, Colorado, New York, and Washington, Sierra Club and CCAN have filed *amicus* briefs and/or intervened in support of state and local governments' efforts to exercise their traditional police powers to protect public health and safety by regulating greenhouse gas emissions from buildings. Sierra Club and CCAN have an interest in ensuring that federal law is not misinterpreted to thwart the ability of Maryland or other states to safeguard their residents through legitimate exercises of authority, such as the Maryland BEPS.

Sierra Club and CCAN are also engaged in multiple administrative and legislative efforts to reduce Marylanders' exposure to harmful air pollution from buildings. Sierra Club and CCAN have filed comments with the Maryland Public Service Commission in support of long-term planning to reduce reliance on the aging, polluting gas system, and Sierra Club has raised alarms about Plaintiff Washington Gas Light Company's attempts to spend millions of ratepayer dollars building new gas distribution pipes.[3] Sierra Club also joined the Maryland Office of People's Counsel in objecting to Plaintiff Washington Gas Light's false statements to customers that

---

[1] *See* Sonoma Technology, *Ozone Impacts from Building Combustion Sources on Nonattainment Areas in Maryland* (Sept. 25, 2024), *available at* https://www.sierraclub.org/sites/default/files/2024-11/md_buildingso3_final.pdf; Beyond Gas, *Cooking Up Danger* (Nov. 2024), *available at* https://beyondgasdc.org/cooking-up-danger-community-study-reveals-hazardous-nitrogen-dioxide-levels-in-dc-and-maryland-kitchens/.
[2] CCAN, et al., *Cutting Through the Smog: How Air Quality Standards Help Solve the Hidden Health Toll Of Air Pollution From Maryland's Homes And Businesses* at 2 (Sept. 2023), https://www.greenandhealthyhomes.org/wp-content/uploads/MD-NOx-Report-_V12_unembargoed.pdf.
[3] *See* Md. Pub. Serv. Comm'n Case Nos. 9707 (Petition of the Office of People's Counsel for Near-Term, Priority Actions and Comprehensive, Long-Term Planning For Maryland's Gas Companies), & 9708 (Washington Gas Light Company's Application for Approval of a New Gas System Strategic Infrastructure Development and Enhancement Plan and Accompanying Cost Recovery Mechanism).

2

inaccurately portrayed gas usage in homes as a climate-friendly action.[4] On March 20, 2025, the Public Service Commission notably agreed that Washington Gas Light's statements were misleading, and is now considering whether to impose civil penalties as a sanction.[5]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Compared to other sectors, buildings are an outsized source of greenhouse gas emissions. Without efforts to curb these emissions, such as the BEPS, Maryland will be unable to meet its legal obligations under the CSNA. There is an established scientific basis and growing public understanding that emissions from our homes, schools, and workplaces are making us sick and driving climate change. In response, states and localities have acted on public concern and exercised their legislative authority to reduce emissions from buildings to abate the health, climate, and air quality impacts of those emissions. This pollution causes serious harm, including asthma, chronic obstructive pulmonary disease, cardiovascular disease, cognitive deficits, cancer, and death. The BEPS program does not address covered products under the Energy Policy and Conservation Act ("EPCA") and does not dictate specific energy use standards for a given covered product. Plaintiffs' Complaint is therefore a fatally flawed attempt to stretch the flawed Ninth Circuit interpretation of EPCA's preemptive reach. To the contrary, the BEPS acts as a flexible and phased program to address overall energy intensity for covered buildings in Maryland of a certain size, in an effort to reduce their overall emissions. Because the Maryland BEPS are a valid exercise of Maryland state authority, Defendant's Motion to Dismiss should be granted, and Plaintiffs' Complaint should be dismissed with prejudice.

---

[4] Md. Pub. Serv. Comm'n Case No. 9673 (Comments of the Sierra Club) (January 7, 2022).
[5] Md. Pub. Serv. Comm'n Case No. 9673 (Complaint of the Office of People's Counsel Against Washington Gas Light Company and WGL Energy Services, Inc.), PULJ Ruling on Washington Gas Light Company's Request for Dismissal and the Maryland Office of People's Counsel's Motion for Summary Judgment (March 20, 2025).

**ARGUMENT**

**I.    Buildings Emit Harmful Pollutants with Known Public Health Threats that Degrade Air Quality.**

The primary driver of building emissions is the combustion of fossil gas for a variety of consumer uses. Termed "natural gas" by industry, the blend of chemicals that is piped into homes and other buildings across the country is primarily composed of methane.[6] The chemical byproducts of combusting gas include the greenhouse gas carbon dioxide, as well as nitrogen dioxide,[7] carbon monoxide, particulate matter, and volatile organic compounds such as benzene and formaldehyde.[8] Exposure to these pollutants has been increasingly linked to negative human health effects, including higher rates of respiratory and cardiovascular illnesses, such as childhood asthma, as well as reduced lung function and premature death.[9]

*Nitrogen Dioxide.* The U.S. Environmental Protection Agency ("EPA") has long recognized that nitrogen dioxide, a prevalent pollutant from gas combustion, can cause asthma.[10] Even short-term nitrogen dioxide exposure can cause impaired lung function, respiratory symptoms, inflammation of the airway, and asthma exacerbations requiring hospitalization.[11]

---

[6] Drew R. Michanowicz et al., *Home Is Where the Pipeline Ends: Characterization of Volatile Organic Compounds Present in Natural Gas at the Point of the Residential End User*, 56 Env't Sci. & Tech. 10258, 10258 (June 2022), *available at* https://pubs.acs.org/doi/10.1021/acs.est.1c08298 (identifying 296 volatile organic compounds aside from methane in cooking gas samples); Eric D. Lebel et al., *Composition, Emissions, and Air Quality Impacts of Hazardous Air Pollutants in Unburned Natural Gas from Residential Stoves in California*, 56 Env't Sci. & Tech. 15828 (Oct. 20, 2022), *available at* https://pubs.acs.org/doi/pdf/10.1021/acs.est.2c02581.

[7] "Nitrogen Dioxide (NO2) is one of a group of highly reactive gases known as oxides of nitrogen or nitrogen oxides (NOx). Other nitrogen oxides include nitrous acid and nitric acid. NO2 is used as the indicator for the larger group of nitrogen oxides." U.S. EPA, *Basic Information about NO2*, *available at* https://www.epa.gov/no2-pollution/basic-information-about-no2#What%20is%20NO2 (last updated July 16, 2024).

[8] U.S. EPA, *What are combustion products?*, *available at* https://www.epa.gov/indoor-air-quality-iaq/what-are-combustion-products (last updated Dec. 4, 2024); U.S. EPA, *Facts About Formaldehyde*, https://www.epa.gov/formaldehyde/facts-about-formaldehyde (last updated Sept. 11, 2024).

[9] Andee Krasner et al., *Cooking with Gas, Household Air Pollution, and Asthma: Little Recognized Risk for Children*, 83 J. Env't Health 8, 14 (2021), *available at* https://www.proquest.com/docview/2505418593?sourcetype=Scholarly%20Journals.

[10] National Primary and Secondary Ambient Air Quality Standards, 36 Fed. Reg. 8186 (Apr. 30, 1971).

[11] Primary National Ambient Air Quality Standards for Nitrogen Dioxide, 75 Fed. Reg. 6474, 6479-80 (Feb. 9, 2010).

4

Exposure to nitrogen dioxide is also linked to chronic obstructive pulmonary disease, cardiovascular effects, diabetes, cancer, and reproductive harms.[12]

*Particulate Matter.* Particulate matter is another form of air pollution generated by gas appliances that poses a unique threat to human health.[13] $PM_{2.5}$, or fine particulate matter, refers to inhalable particles with diameters that are 2.5 micrometers and smaller, and thus easily penetrate the defenses of our lungs.[14] $PM_{2.5}$ is mainly produced by "combustion processes and by atmospheric reactions of various gaseous pollutants."[15] Exposure to $PM_{2.5}$ pollution has been linked to premature death, emergency visits and hospitalizations, heart attacks, strokes, worsening of chronic heart failure, impaired fetal and childhood lung function development, acute and chronic decreases in lung function, respiratory infections, and the development and exacerbation of asthma.[16] Even short-term exposure "is likely causally associated with mortality from cardiopulmonary diseases, increased hospitalization and emergency department visits for cardiopulmonary diseases, increased respiratory symptoms, decreased lung function, and changes in physiological indicators for cardiovascular health."[17] There is no safe level of $PM_{2.5}$ exposure.[18]

---

[12] U.S. EPA, *Integrated Science Assessment (ISA) For Oxides of Nitrogen – Health Criteria*, 1-17, 1-22 to 1-30, 5-55 (Jan. 2016), *available at* https://assessments.epa.gov/isa/document/&deid=310879.
[13] National Ambient Air Quality Standards for Particulate Matter, 62 Fed. Reg. 38,652, 38,653–54 (July 18, 1997).
[14] *Id.* at 38,654.
[15] National Ambient Air Quality Standards for Particulate Matter, 71 Fed. Reg. 61,144, 61,146 (Oct. 17, 2006).
[16] Clean Air Fine Particle Implementation Rule, 72 Fed. Reg. 20,586, 20,586-87 (Apr. 25, 2007). *See also* U.S. EPA, *Health and Environmental Effects of Particulate Matter (PM): Health Effects*, *available at* https://www.epa.gov/pm-pollution/health-and-environmental-effects-particulate-matter-pm (last updated July 16, 2024).
[17] Prevention of Significant Deterioration (PSD) for Particulate Matter Less Than 2.5 Micrometers ($PM_{2.5}$)—Increments, Significant Impact Levels (SILs) and Significant Monitoring Concentration (SMC), 72 Fed. Reg. 54,112, 54,128 (Sept. 21, 2007).
[18] U.S. EPA, *Integrated Science Assessment for Particulate Matter* ES-23 (Dec. 2019), *available at* https://cfpub.epa.gov/ncea/isa/recordisplay.cfm?deid=347534.

*Carbon Monoxide.* According to EPA, homes with gas-burning appliances have higher carbon monoxide levels than those without.[19] Carbon monoxide poisoning results in more than 400 deaths and over 100,000 emergency department visits in the United States annually.[20] Carbon monoxide exposure is also linked to respiratory illnesses and neurological impairment.[21]

*Cancer-Causing Compounds.* In addition to the byproducts of fossil fuel burning that have been understood for decades, newer research indicates that the combustion of gas releases semi-volatile organic compounds known as polycyclic aromatic hydrocarbons or PAHs,[22] as well as volatile organic compounds, such as formaldehyde[23] and benzene.[24] For instance, a 2022 study of Boston's gas supply revealed the presence of 296 volatile organic compounds, including 21 hazardous air pollutants.[25] All of these pollutants are linked to cancer and, thus, no safe level of exposure can be recommended. For instance, long-term exposure to benzene can lead to blood disorders and, according to the American Cancer Society, is linked to higher rates of cancer, including leukemia and other blood cancers. Short-term exposure to benzene can also cause "drowsiness, dizziness, headaches, tremors, confusion, and/or unconsciousness."[26]

Fossil fuel combustion in buildings is also a major source of outdoor air pollution. According to data from EPA's National Emissions Inventory, combusting fossil fuels in buildings releases over 250,000 tons per year of carbon monoxide, over 460,000 tons of nitrogen

---

[19] U.S. EPA, *Carbon Monoxide's Impact on Indoor Air Quality*, available at https://www.epa.gov/indoor-air-quality-iaq/carbon-monoxides-impact-indoor-air-quality (last updated Dec. 4, 2024).
[20] U.S. Ctr. for Disease Control, *Carbon Monoxide Poisoning*, available at https://www.cdc.gov/carbon-monoxide/about/index.html (last visited Dec. 9, 2024); *see also* Jason J. Rose *et al.*, *Carbon Monoxide Poisoning: Pathogenesis, Management, and Future Directions of Therapy*, 195 Am. J. Respiratory & Critical Care Med. 596 (2017), *available at* https://www.atsjournals.org/doi/full/10.1164/rccm.201606-1275CI.
[21] U.S. EPA, *supra* n.30 at 2-7.
[22] U.S. Ctr. for Disease Control, Polycyclic Aromatic Hydrocarbons (PAHs) Fact Sheet (Nov. 2009), *available at* https://www.epa.gov/sites/default/files/2014-03/documents/pahs_factsheet_cdc_2013.pdf.
[23] U.S. EPA, *supra* n.12.
[24] Michanowicz et al., *supra* n.4, at 10266.
[25] *Id.* at 10258.
[26] Am. Cancer Soc'y, *Benzene and Cancer Risk*, available at https://www.cancer.org/cancer/risk-prevention/chemicals/benzene.html (last revised Feb. 1, 2023).

oxides, and more than 15,000 tons of fine particulate matter nationwide.[27] In Maryland, the nitrogen oxide pollution from fossil fuel combustion in buildings is three times greater than from all of Maryland's fossil fuel power plants combined.[28]

The consequences of these emissions on ambient air quality are significant and harmful. Ground-level ozone is a highly reactive gas that is formed by interactions between nitrogen oxides and volatile organic compounds, which are emitted by gas-burning equipment and other sources, in the presence of heat and sunlight.[29] Multiple areas in Maryland are in nonattainment of EPA's health-based National Ambient Air Quality Standards for ozone, which states are legally responsible for attaining under the Clean Air Act. Ozone exposure, even short-term exposure, is linked to chronic conditions affecting the respiratory, cardiovascular, reproductive, and central nervous systems, as well as premature mortality.[30] Ozone exposure is associated with increased asthma attacks, emergency room visits, hospitalization, and medication for asthma.[31] Abating these human health harms was a critical consideration for passage of the CSNA and the BEPS. In support of the bill, Sierra Club noted that if adopted across the United States, the BEPS would help avoid "an estimated 172–405 premature deaths, 171 hospital admissions, 11,000 asthma exacerbations, 54,000 respiratory symptoms, 21,000 lost days of work, and 16,000 lost days of school."[32]

---

[27] Data from U.S. EPA, *2017 National Emissions Inventory (NEI) Data*, *available at* https://www.epa.gov/air-emissions-inventories/2017-national-emissions-inventory-nei-data#dataq.
[28] CCAN*, et al.,* supra n.2 at 11.
[29] U.S. EPA, *What is Ozone?, available at* https://www.epa.gov/ozone-pollution-and-your-patients-health/what-ozone# (last updated June 20, 2024).
[30] U.S. EPA, *Integrated Science Assessment for Ozone and Related Photochemical Oxidants* 1-5, Tbl. 1-1 (Feb. 2013), *available at* https://ordspub.epa.gov/ords/eims/eimscomm.getfile?p_download_id=511347 [hereinafter "2013 Ozone Integrated Science Assessment"].
[31] U.S. EPA *Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards,* at 3-27 to 3-28, *available at* https://www3.epa.gov/ttn/naaqs/standards/ozone/data/20140829pa.pdf.
[32] Sierra Club Testimony in support of SB 528 – Climate Solutions Now Act of 2022 (February 15, 2022), available at https://mgaleg.maryland.gov/cmte_testimony/2022/ehe/1FKz7bNh-KFSStR3VhXcBNa0xu83ccGO6.pdf .

While the health impacts of ozone are ubiquitous, certain populations are at an increased risk for ozone-related health effects, including people with asthma, children, the elderly, and outdoor workers.[33] As discussed above, multiple areas in Maryland have historically been and are still currently classified as being in nonattainment of federal ozone standards. In the above-described report that Sierra Club released on the impact of emissions from Maryland's buildings on ozone levels, modeling revealed that on high ozone days, buildings in Maryland contributed as much as 1.99 parts per billion (ppb) to air quality violations. Given that Maryland is often about 1 to 3 ppb in excess of the federal ozone standard of 70 ppb, reducing emissions from buildings—through policies such as the BEPS—could bring Maryland from an air quality level that is unsafe and violates EPA's standards to a safe air quality level.[34]

Fossil fuel equipment also emits nitrogen oxides, which, as described above, contributes to the formation of deadly fine particulate matter ($PM_{2.5}$). Noting that buildings emit pollution where Marylanders live and work, the Green and Healthy Homes Initiative provided data in its testimony in support of the CSNA showing a statistically significant increase in all-cause mortality linked to increases in local $PM_{2.5}$ emissions.[35] Alarmingly, the health harms due to these emissions tend to fall disproportionately on people of color, who are exposed to approximately 90 percent more ambient $PM_{2.5}$ pollution from residential gas combustion nationwide than are whites.[36]

---

[33] U.S. EPA, *supra* n.30 at 2-30.
[34] U.S. EPA, *Ozone National Ambient Air Quality Standards (NAAQS)*, *available at* https://www.epa.gov/ground-level-ozone-pollution/ozone-national-ambient-air-quality-standards-naaqs; U.S. EPA, *Air Quality Design Values*, *available at* https://www.epa.gov/system/files/documents/2024-06/o3_designvalues_2021_2023_final_06_04_24.xlsx.
[35] GHHI Testimony in support of SB 528 - Climate Solutions Now Act of 2022 (February 14, 2022), *available at* https://mgaleg.maryland.gov/cmte_testimony/2022/ehe/1sWaXSArKjeZMsVJgqQwV2z87MeGWYwAr.pdf
[36] Christopher W. Tessum et al., *PM2.5 Polluters Disproportionately and Systemically Affect People of Color in the United States*, 7 Sci. Advances eabf4491, supplementary data file S2 (2021), https://doi.org/10.1126/sciadv.abf4491

## II. Building Emissions Cause Harmful Climate Pollution, in Contravention of Maryland Law.

In addition to contributing to harmful ozone pollution and degrading immediate outdoor air quality, buildings are a significant source of greenhouse gas emissions contributing to climate change. This climate pollution impedes Maryland's ability to comply with its binding climate laws, and has national and international repercussions because it worsens the climate crisis. As described above, methane gas combustion in Maryland's building sector releases the greenhouse gas carbon dioxide, and methane—an even more potent greenhouse gas—also leaks from gas distribution pipes that supply buildings with this fuel. The building sector comprises a significant and growing share of Maryland's total greenhouse gas emissions. According to the State Climate Policy Dashboard database, which models the anticipated effect of state policies on future emissions, about 17% of Maryland's total greenhouse gas emissions came from the building sector in 2024.[37] The model reflects that, as Maryland reduces emissions from other sectors over the next 25 years, the share of projected emissions from buildings will rise from about 18% in 2025 to 30% in 2050.[38]

Maryland has adopted ambitious legislation to curb buildings' climate impacts. With 3,000 miles of tidal shoreline, Maryland is one of the most climate-vulnerable states in America.[39] The state faces many other climate risks, from heat waves to intensifying storms to saltwater intrusion, to name a few. Acknowledging the myriad harms posed by climate change, the Maryland General Assembly passed the CSNA to require Maryland to reduce statewide

---

[37] State Climate Policy Dashboard, *Greenhouse Gas Emissions Projections in Maryland*, *available at* https://www.climatepolicydashboard.org/states/Maryland.
[38] *Id*.
[39] University of Md. Center for Enviro. Science, *Sea-Level Rise Projections*, *available at* https://www.umces.edu/sea-level-rise-projections#:~:text=Maryland%2C%20with%203%2C100%20miles%20of,vulnerable%20to%20sea%2Dlevel%20rise.&text=Storm%20surges%20from%20tropical%20storms,on%20the%20higher%20sea%20level.

emissions 60% below 2006 levels by 2031 and reach carbon neutrality by 2045.[40] As part of that landmark law, the BEPS were put forth as a robust strategy to reduce emissions from the buildings sector while providing flexibility for Maryland building owners. The CSNA requires MDE to "develop building energy performance standards for covered buildings that achieve a 20% reduction in net direct greenhouse gas emissions on or before January 1, 2030, as compared with 2025 levels for average buildings of similar construction; and net-zero direct greenhouse gas emissions on or before January 1, 2040."[41]

In the fall of 2022, MDE began hosting public meetings on its BEPS regulations, in which Sierra Club and CCAN participated. Sierra Club and CCAN later joined coalition partners in submitting comments on two drafts of the BEPS regulations, urging MDE to swiftly adopt this critical public health and climate measure.[42] On December 23, 2024, MDE issued final BEPS regulations, which set numerical greenhouse gas emission limits for different types of covered buildings, and require building owners to regularly report data on their total energy consumption and the greenhouse gas emissions they generate.[43] The BEPS regulations leave it up to the building owner to decide how to comply with these emission limits; contrary to Plaintiffs' assertions, these regulations do not require or restrict the usage of any types of appliances or equipment in buildings. Instead, building owners can choose from a wide range of measures to reduce their emissions and meet the BEPS emissions targets, including weatherization, electrification, alternative fuels, and carbon capture, among others. Alternatively, building

---

[40] MD. CODE ANN., ENVIR. §§ 2–1204.1, 2–1204.2.
[41] *Id*. § 2–1602(A).
[42] See Maryland Climate Partners, *BEPS Comments to MDE* (Jan. 18, 2024), https://www.sierraclub.org/sites/default/files/2024-01/Climate%20Partners%20Comments%20on%20BEPS%201.18.24.pdf; MDE, *Technical Support Document for COMAR 26.28 – Building Energy Performance Standards* at 321 (Nov. 2023), https://mde.maryland.gov/programs/regulations/air/Documents/BEPS/BEPS%20TSD%20PACKAGE%20FINAL%20%2812-5-2023%29.pdf.
[43] Md. COMAR 26.28. 03.

10

owners may choose to comply with the BEPS by paying an alternative compliance fee based on the social cost of their emissions in excess of the targets.[44]

The BEPS is a measured and calibrated tool to broadly address greenhouse gas emissions from buildings—it is the product of careful deliberation and is aimed at meeting Maryland's emission and climate mandates.

### III. Regulating Air Pollution from Buildings Falls Squarely Within Maryland's Authority.

The Maryland BEPS program is clearly not preempted by EPCA, which is chiefly concerned with setting energy efficiency standards for appliances; to the contrary, the BEPS regulations are aimed at reducing emissions from buildings. These regulations neither establish, reference, rely upon, nor are connected to any "energy efficiency" or "energy use" standards for any covered appliances, as those terms are defined under EPCA. *Metro Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156-57 (2d Cir. 2010) (citing *Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (2010)) (stating that a law is preempted when a preempted subject matter is referenced or essential to the law's operation). Simply put, it is not "the type of state law that Congress intended [EPCA] to supersede." *De Buono v. NYSA-ILA Med. and Clinical Services Fund*, 520 U.S. 806, 814 (1997).

To the contrary, the BEPS regulations are a valid exercise of Maryland's police power, which authorizes the state to promulgate regulations that protect its residents' public health and safety. The U.S. Court of Appeals for the Fourth Circuit has explained that states clearly have the "police power to promote the public health, safety, welfare, and morals of the State." *Star Scientific Inc. v. Beales*, 278 F.3d 339, 361 (4th Cir. 2002) (upholding Virginia's right to exact

---

[44] Md. COMAR 26.28. 04. The specific components of the BEPS policy may be changing in light of Maryland legislation that just passed, which is heading to the Governor for signature. *See* Md. H.B. 49 (2025). Nothing in the legislation would change the fundamentals of the BEPS.

11

damages from tobacco manufacturers as compensation for the harms cigarettes caused to Virginia residents). As set forth above, by reducing air pollution from buildings, the BEPS will provide critical public health protections and therefore fall squarely within the state's police powers. Plaintiffs' overbroad reading of EPCA would hamstring states' ability to protect their residents from harmful pollution, an important element of their police power that is far removed from regulating appliances' energy efficiency, and that Congress did not intend to disturb in enacting EPCA. *See, e.g.*, 75 Fed. Reg. 59,470, 59,530 (Sept. 27, 2010) (U.S. Department of Energy explaining that it "interprets 'regulation concerning energy use'" in EPCA's preemption provision "to be equivalent to an 'energy conservation standard'"); 47 Fed. Reg. 14,424, 14,456 (Apr. 2, 1982) (U.S. Department of Energy proposing to review waivers of preemption only for "State regulations that are appliance *efficiency* standards," because "[a state] rule whose purpose is other than energy efficiency such as a law on fire safety, would not appear to be preempted by the Federal rule, even if it has a secondary and incidental effect of improving the efficiency of a covered product").

Moreover, Plaintiffs' expansive reading of EPCA's preemptive scope would run contrary to other Congressional enactments that have carefully preserved states' and localities' traditional authority to address outdoor air pollution, including emissions from combustion appliances. *See, e.g.*, 42 U.S.C. § 7401 (finding that "air pollution control at its source is the primary responsibility of States and local governments"); 42 U.S.C. § 7416 (preserving the "right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution"); 47 Fed. Reg. 29,231 (Jan. 7, 1986) (U.S. Environmental Protection Agency approving local emission standards for furnaces into California's Clean Air Act State

Implementation Plan); 75 Fed. Reg. 20,112, 20,133 (Apr. 16, 2010) (U.S. Department of Energy recognizing that local emission standards for water heaters can affect their efficiency).

Indeed, a federal court in New York recently dismissed a lawsuit challenging a city law setting emissions limits for new buildings. *Ass'n of Contracting Plumbers v. City of New York*, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025) (slip op.) at *14-*15. The court reasoned that the city's prohibition of high-emitting fuels in certain new buildings "does not have a connection with EPCA's subject matter because it does not 'focus on' the performance standards applicable to covered products" and "does not draw any distinction between products based on their energy efficiency or energy use as manufactured." *Id*. at *13 (citing *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008)). The court observed that "[r]egulations prohibiting the use of certain types of fuels and appliances in residential, commercial, and industrial settings are integral to municipal construction and fire codes." These core state regulations would be preempted under the Plaintiffs' reading of EPCA—"an absurd result that the Court must avoid." *Id.* (citing *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 160 (2d Cir. 2007))*; see also Lara-Aguilar v. Sessions*, 889 F.3d 134, 144 (4th Cir. 2018) (*citing Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)) (noting that the court is "to avoid 'interpretations of a statute which would produce absurd results'"). Because no federal law grants any federal agency general authority to regulate indoor air pollution,[45] Plaintiffs' interpretation would create a regulatory void, where neither federal nor state and local authorities can act to address the threats posed by building emissions. EPCA cannot reasonably be read to *sub silentio* preempt the Maryland BEPS and other important exercises of police power to protect health and safety.

---

[45] *See* EPA, Regulatory and Guidance Information by Topic: Air ("EPA does not regulate indoor air"), https://www.epa.gov/regulatory-information-topic/regulatory-and-guidance-information-topic-air.

## CONCLUSION

The undersigned *amici* urge this Court to uphold Maryland's right to protect its residents and their environment by reducing the unsafe, unhealthy pollution from Maryland's buildings. For the reasons stated above, *amici* request that this Court grant Defendant's Motion and dismiss Plaintiffs' claims with prejudice.

Dated: April 8, 2025                          Respectfully Submitted,

/s/ *Timothy R. Oberleiton*
Timothy R. Oberleiton (*pro hac vice* pending)
Earthjustice
1001 G Street NW
Washington, DC 20001
(202) 793-5820
toberleiton@earthjustice.org

/s/ *Susan Stevens Miller*
Susan Stevens Miller (D.Md. Bar No. 06100)
Earthjustice
1001 G Street NW
Washington, DC 20001
(202) 667-4500
smiller@earthjustice.org

14